UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

-------------------------------------------------------

|  |  |  |
|---|---|---|
| TAMARA TURNER, *et al.*, | : | |
| | : | CASE NO. 1:11-CV-00056 |
| Plaintiffs, | : | |
| | : | |
| vs. | : | OPINION & ORDER |
| | : | [Resolving Doc. No. 8] |
| LERNER, SAMPSON & ROTHFUSS, | : | |
| | : | |
| Defendant. | : | |
| | : | |

-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

        The Defendant, Lerner, Sampson & Rothfuss ("Lerner"), moves the Court to dismiss this

action under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief

can be granted.  [Doc. 8.]  The Plaintiffs oppose the motion.  [Doc. 14.] The Defendant replied.

[Doc. 19.]

        For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the

Defendant's motion to dismiss.

## I. Background

        In this putative class action, Plaintiffs Tamara Turner, Phillip Turner, Mary Sweeney, James

Unger, and Kelly Unger file suit alleging violations of state and federal consumer protection statutes.

[Doc. 1-1.]  The Plaintiffs bring claims under the Fair Debt Collection Practices Act ("FDCPA"),

15 U.S.C. §1692, as well as a variety of Ohio state law claims, including the Ohio Consumer Sales

Case No. 1:11-CV-00056
Gwin, J.

Protection Act, O.R.C. Chapter 1345.  [Doc. 1-1.]

This action stems from a number of mortgage foreclosure suits that Defendant Lerner initiated in Ohio state court.  [Id.]  Defendant Lerner is a law firm that prosecutes mortgage foreclosure actions.  The Plaintiffs allege that Defendant Lerner engages in the widespread practice of filing and prosecuting mortgage foreclosure actions, notwithstanding the fact that many of Lerner's clients lack proper standing to sue.  [Id. at 2.]  According to the Plaintiffs, the Defendant also employs individuals who regularly execute assignments of mortgages on behalf of the Mortgage Electronic Registration System ("MERS") to their clients without proper legal authority to do so. [Id at 2.]  The Plaintiffs further allege that Defendant Lerner has the practice of filing false and misleading affidavits in an effort to mislead courts into ruling that Lerner's clients possess proper standing to prosecute foreclosure actions.  [Id. at 2.]  The Plaintiffs say that this practice has caused hundreds – and possibly thousands – of individuals in Ohio to defend frivolous foreclosure actions in which the Defendant's clients lacked basic standing to sue.  [Id.]

The Plaintiffs also set forth a number of allegations specific to the named Plaintiffs.  First, the Plaintiffs say that Tamara and Phillip Turner resided in a home at 20526 Byron Road, Shaker Heights, Ohio, until Defendant Lerner filed a foreclosure action on behalf of Provident Funding Associates L.P. on October 16, 2009.  [Id. at 5.] Tamara and Phillip Turner allege that they mistakenly believed that they only had twenty-eight days to vacate their home, and as a result, moved in with Phillip Turner's mother.  [Id. at 5.]  On July 26, 2010, Defendant Lerner filed an affidavit with the Cuyahoga County Court of Common Pleas that falsely set forth the Provident Funding was the real party in interest in the foreclosure action.  [Id. at 5.]  However, on November 9, 2010, the Ohio state court action against the Turners was dismissed for lacking of standing, because Defendant

-2-

Case No. 1:11-CV-00056
Gwin, J.

Lerner was unable to prove that Provident had standing as holder of the relevant mortgage note to file the foreclosure action.  [*Id.* at 5.] Apparently, Provident Funding took no appeal from that dismissal.

Second, the Plaintiffs say that Mary Sweeney owns a home located at 315 Overlook Park, Cleveland. [*Id.* at 6.] On January 5, 2010, Defendant Lerner filed a foreclosure action on behalf of Bank of America, claiming that Bank of America owned a promissory note which gave it standing to institute a foreclosure proceeding against her. [*Id.* at 6.]  The Plaintiffs say that Defendant Lerner caused one of their employees – Shellie Hill – to fraudulently execute an assignment of the relevant mortgage note from MERS to Bank of America. [*Id.* at 6.]  The Plaintiffs allege this assignment was not valid because Shellie Hill did not have any authority from MERS to execute the assignment to Bank of America.  [*Id.* at 6.]   However, on August 24, 2010, the Ohio state court action against Sweeney was dismissed for lacking of standing, because Defendant Lerner was unable to prove that Bank of America had standing as holder of the relevant mortgage note to file the foreclosure action. [*Id.* at 6-7.]  Apparently, Bank of America took no appeal from that dismissal.

Third, and finally, Plaintiffs say that James and Kelly Unger own a home at 3158 Morley Road, Shaker Heights, Ohio. [*Id.* at 7.] On May 29, 2007, Defendant Lerner served the Ungers with a foreclosure complaint by on behalf of Bank of New York. [*Id.* at 7.]  The Plaintiffs claim that Lerner's employee, Shellie Hill, fraudulently assigned the mortgage note on behalf of MERS to Bank of New York. [*Id.* at 7-8.] The Plaintiffs say this assignment was not valid because Shellie Hill did not have any authority from MERS to execute the assignment to Bank of New York.  [*Id.* at 7-8.] On July 14, 2009, the Cuyahoga County Court of Common Pleas dismissed the foreclosure action because the Defendant failed to prove that the Bank of New York had standing to sue.  [*Id.* at 8.]

Case No. 1:11-CV-00056
Gwin, J.

The Ungers were again served with a foreclosure complaint in an action filed by the Bank of New

York Mellon Trust Company on November 30, 2009.  [*Id.* at 8.]  This second action was dismissed

on July 13, 2010; there is no allegation that Defendant Lerner directly participated in this second

lawsuit.  [*Id.* at 8.]

 On January 4, 2011, Plaintiffs filed a complaint in the Cuyahoga County Court of Common

Pleas.  [*Id.*]  The Plaintiffs bring six causes of action of behalf of a putative class of all Ohio

homeowners who were defendants in foreclosure actions brought by Defendant Lerner since January

5, 2006.  [*Id.*]  Specifically, the Plaintiffs bring causes of action:  (1) under the FDCPA, 15 U.S.C.

§1692, saying the Defendant used false, deceptive, and misleading practices to prosecute foreclosure

actions (Count 1); (2) under the FDCPA, saying that the Defendant's behavior constitutes slander

of credit (Count 2); (3) for abuse of process under Ohio state law (Count 3); (4) for malicious

prosecution under Ohio state law (Count 4); (5) under the Ohio Consumer Sales Protection Act,

O.R.C. Chapter 1345, saying the Defendant's filing of frivolous lawsuits constitutes an "unfair,

deceptive and unconscionable sales practice" (Count 5); and (6) for filing of frivolous lawsuits under

Ohio Revised Code § 2323.51 (Count 6).  [Doc. 1-1.]

 On January 7, 2011, the Defendant removed the action to federal court.  [Doc. 1.] The Court

has proper subject matter jurisdiction over the claims brought under the FDCPA and supplemental

jurisdiction over the claims brought under Ohio state law.  28 U.S.C. § 1331; 15 U.S.C. § 1692k(d);

28 U.S.C. § 1367(a).  The Defendant now moves to dismiss this action for failing to state a claim.

[Doc. 8.]

## II. Legal Standard

 A court may grant a motion to dismiss only when "it appears beyond doubt" that the plaintiff

Case No. 1:11-CV-00056
Gwin, J.

fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Conley v. Gibson*, 355 U.S. 41, 45 (1957). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility requirement is not a "probability requirement," but requires "more than a sheer possibility that the defendant has acted unlawfully." *Id.*

Federal Rule of Civil Procedure 8 provides the general standard of pleading and only requires that a complaint "contain . . . a short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 129 S. Ct. at 1949 (citations removed). In deciding a motion to dismiss under Rule 12(b)(6), "a court should assume the[] veracity" of "well-pleaded factual allegations," but need not accept a plaintiff's conclusory allegations as true. *Iqbal*, 129 S. Ct. at 1949-51.

### III. Analysis

*III.A Fair Debt Collection Practices Act (Count 1)*

Congress enacted the FDCPA in order to eliminate "the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). The statute is very broad, and was intended to remedy "what it considered to be a widespread problem." *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir.1992). "When interpreting the FDCPA, [courts should] begin with the language of the statute itself . . ." *Schroyer v. Frankel*, 197 F.3d 1170, 1174 (6th Cir.1999). With the purpose of the FDCPA in mind, the Court will proceed to the substance of the Plaintiffs' claims.

Case No. 1:11-CV-00056
Gwin, J.

> i. Equitable Tolling

Claims brought under the FDCPA are subject to a one-year statute of limitations. 15 U.S.C. § 1692k(d). The claims brought by Plaintiffs James and Kelly Unger are not timely, since the last action alleged to be taken by the Defendant occurred in July, 2009. Therefore, unless equitable tolling applies to their claim, it must be dismissed as untimely.

The Sixth Circuit has not ruled on whether equitable tolling applies to claims under the FDCPA. *Whittiker v. Deutsche Bank Nat. Trust Co.*, 605 F.Supp.2d 914, 917 (N.D. Ohio 2009). Nonetheless, since the Sixth Circuit has held that equitable tolling applies to claims brought under the Truth in Lending Act, district courts in this Circuit generally also apply equitable tolling principles to claims brought under the FDCPA. *See, e.g.*, *Zigdon v. LVNV Funding, LLC*, 2010 WL 1838637 at *6-12 (N.D. Ohio, Apr. 23, 2010); *Whittiker*, 605 F. Supp.2d at 917; *Foster, et al. v. D.B.S. Collection Agency*, 463 F.Supp.2d 783, 799 (S.D. Ohio 2006).

To benefit from equitable tolling, a plaintiff must show that she has been pursuing her rights diligently and that some extraordinary circumstance stood in her way. *Lawrence v. Florida*, 549 U.S. 327, 335 (2007). Equitable tolling is "available only in compelling circumstances which justify a departure from established procedures." *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1488 (6th Cir. 1989). Sixth Circuit case law has consistently held that the circumstances which will lead to equitable tolling are rare. *Souter v. Jones*, 395 F.3d 577, 590 (6th Cir. 2005). Moreover, the plaintiff has the burden of persuading the court that she is entitled to equitable tolling. *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004). The following factors are generally considered when the issue of equitable tolling arises: (1) lack of notice of the filing requirement, (2) lack of constructive knowledge of the filing requirement, (3) diligence in pursuing one's rights, (4) absence of prejudice

-6-

Case No. 1:11-CV-00056
Gwin, J.

to the defendant, and (5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement.  *Chavez v. Carranza*, 559 F.3d 486, 492 (6th Cir. 2009).

The Plaintiffs say that the claims of James and Kelly Unger should be subject to equitable tolling since another law firm attempted to foreclose on the Ungers' home in 2010 on behalf of the Bank of New York Mellon Trust Company.  The Plaintiffs allege that the firm which brought the second suit attempted to use the assignment of mortgage previously executed by one of Defendant Lerner's employee as evidence of standing.  [Doc. 14 at 9.] This second foreclosure action was ultimately dismissed on July 13, 2010, also for want of standing to sue.  [*Id.*] There is no allegation that Defendant Lerner participated in this second action or otherwise was connected to it.

The Court does not find this sufficient reason to justify equitable tolling of the statute of limitations.  The Ungers do not allege any circumstances that would have prevented them from filing this action within the one-year statute of limitations.  The Ungers do not allege or proffer any evidence showing that they have been diligently pursuing their legal rights or that Defendant Lerner concealed their alleged wrongdoing or tricked them into not exercising rights.  *See Mezo v. Holder,* 615 F.3d 616, 620 (6th Cir. 2010); *Barry v. Mukasey,* 524 F.3d 721, 724 (6th Cir. 2008).  Indeed, the Ungers were free to bring all claims related to the first lawsuit prior to or during the pendency of the second lawsuit.  If anything, the Ungers are alleging an ongoing violation that did not end until July, 2010.  However, this argument also fails, because there is no allegation that Defendant Lerner filed or otherwise participated in the second foreclosure action that was filed against the Ungers.

Accordingly, the Court **GRANTS** the Defendant's motion to dismiss all claims brought by Plaintiffs James and Kelly Unger under the FDCPA.

ii. Violation of FDCPA

-7-

Case No. 1:11-CV-00056
Gwin, J.

The Court will now proceed to the claims brought by Plaintiffs Tamara Turner, Phillip Turner, and Mary Sweeney, all of which are brought within the one-year statute of limitations.[1]

Section 1692e of the FDCPA generally prohibits a debt collector from using false, deceptive or misleading representation or means in connection with the collection of a debt.  15 U.S.C. § 1692e.[2]  Section 1692f prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.[3]  In the Sixth Circuit, a false statement that is not deceptive under the objective "least sophisticated consumer" test is not a violation of the FDCPA.  See Lewis v. ACB Business Services, Inc., 135 F.3d 389, 401-02 (6th Cir. 1998).  In Count 1, the Plaintiffs allege Defendant Lerner violated the FDCPA in the underlying foreclosure actions

---

[1] As a preliminary matter, the Court finds that the Defendant is a "debt collector" under FDCPA.  The Supreme Court has held that the FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." Heintz v. Jenkins, 514 U.S. 291, 299 (1995).  Under the FDCPA, a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principle purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or assessed to be owed or due to another." 15 U.S.C. § 1692a(6) (emphasis added).

[2] The sections of 15 U.S.C. § 1692e at issue provide in relevant part:

§ 1692e.  False or misleading representations

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(2) The false representation of – (A) the character, amount, or legal status of any debt; or . . .

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken . . .

(10) The use of any false representations or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

[3] The relevant sections of 15 U.S.C. § 1692f provide:

§ 1692f.  Unfair practices

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

-8-

Case No. 1:11-CV-00056
Gwin, J.

by misrepresenting who owned Plaintiffs' mortgage notes at the time the underlying foreclosure actions were filed, thus concealing the fact that its clients lacked capacity to bring the suits. [Doc. 14 at 5.]

Simple inability to prove present debt ownership at the time a collection action is filed does not constitute a FDCPA violation. *Harvey v. Great Seneca Financial Corporation*, 453 F.3d 324, 331-33 (6th Cir.2006). Courts in the Sixth Circuit applying the FDCPA to lawsuits brought to collect a debt have generally found, however, that where a plaintiff alleges that the plaintiff in an underlying debt collection action says that it was the owner of a debt, "all the while knowing that they did not have means of proving the debt," that a FDCPA complaint will survive a motion to dismiss for failure to state a claim. *See, e.g.*, *Delawder v. Platinum Financial Services*, 443 F. Supp.2d 942, 945 (S.D. Ohio 2005) (false affidavit attached to complaint "all the while knowing that they did not have means of proving the debt").[4]

Here, not only do the Plaintiffs allege that the Defendant filed the foreclosure actions knowing that it did not have the means of proving the ownership of the debt; they also allege that the Defendant knowingly executed misleading affidavits and unauthorized assignments of the notes to their clients. [Doc. 1-1.] The Court finds that this conduct, if proven true, would be actionable under the FDCPA under both Sections 1692e and 1692f. *See Hartman v. Asset Acceptance Corp.*, 467 F. Supp.2d 769, 779 (S.D. Ohio 2004) (holding that a representation that defendant was a "holder in due course" of a debt is actionable as a representation concerning the "legal status" of the

---

[4] *See also Whittiker*, 650 F. Supp.2d at 931 (holding that filing of foreclosure action while knowing that one lacks ability to prove ownership of debt is actionable under the FDCPA); *Kline v. Mortgage Electronic Sec. Systems*, 2010 WL 1133452, at *8 (S.D. Ohio, Mar. 22, 2010) (holding that an inability to prove a debt at the time of filing a collection lawsuit does not violate the FDCPA, but stating suing in court with false attachments in an attempt to prove debt would violate the FDCPA.); *Williams v. Javitch, Block & Rathbone, LLP*, 480 F. Supp.2d 1016 (S.D. Ohio 2007) (knowledge that information in affidavit is false as to specifics of debt violates FDCPA).

Case No. 1:11-CV-00056
Gwin, J.

debt, if the representation is false and if the defendant does not satisfy the bona fide error defense);

*Kline*, 2010 WL 1133452, at *8; *Lee v. Javitch, Block & Rathbone, LLP*, 484 F. Supp.2d 816, 820

(S.D. Ohio 2007) ("Section 1692f of the FDCPA . . . has been described as a 'backstop' in the

statute, intended to cover actionable debt collection practices that may not be expressly addressed

in Sections 1692d and 1692e").[5/]

     Accordingly, the Court **DENIES** the Defendant's motion to dismiss Count 1 of the complaint

as to Plaintiffs Tamara Turner, Phillip Turner, and Mary Sweeney.

*III.B  Slander of Credit (Count 2)*

     The Plaintiffs next bring a cause of action for "slander of credit" under the FDCPA, saying

that instituting a legal action based upon manufactured or false evidence constitutes slander of credit.

[Doc. 1-1.]  The Plaintiffs fail to explain the basis for this claim, other than saying they are bringing

the claim under the FDCPA.  The Court finds, given this paucity of explanation, that the Plaintiffs

fail to allege a valid cause of action for slander of credit.  A claim will not survive a motion to

dismiss where a plaintiff simply lists causes of action, but neglects to make any plausible factual

allegations related to them.

     There are several theories under which "slander of credit" could be actionable.  However, the

Plaintiffs do not allege factual circumstances that would constitute possible violations.  For example,

the Plaintiffs fail to allege that the Defendant made a negative report to a credit reporting agency or

that the Defendant threatened to report the Plaintiffs to a credit agency related to the mortgages in

question.  *See* 15 U.S.C. § 1681h; 15 U.S.C. § 1692e(8).  The Court does not have the duty to

---

[5/] The Court also notes that it concurs with the thoughtful analysis set forth in *Hartman v. Asset Acceptance Corp.*, in which that court found that the common law immunity for statements and pleadings made in court is abrogated by the FDCPA.  467 F. Supp.2d 769 (S.D. Ohio 2004).

Case No. 1:11-CV-00056
Gwin, J.

imagine or devise theories of recovery, and accordingly, the Court **GRANTS** the Defendant's motion

to dismiss Count 2 of the complaint.[6/]

*III.C   Abuse of Process (Count 3)*

The Plaintiffs also bring a claim for abuse of process under Ohio state law.  Under Ohio law,

the elements of a claim for abuse of process are that: "(1) that a legal proceeding has been set in

motion in proper form and with probable cause; (2) the proceeding has been perverted to attempt to

accomplish an ulterior purpose for which it was not designed; and (3) direct damage has resulted

from the wrongful use of process." *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 676  (6th

Cir. 2005) (quoting *Yaklevich v. Kemp, Schaeffer, & Rowe Co. et. al.*, 626 N.E.2d 115, 116 (Ohio

1994)).  "The tort action termed 'abuse of process' has developed for 'cases in which legal procedure

has been set in motion in proper form, with probable cause, and even with ultimate success, but

nevertheless has been perverted to accomplish an ulterior purpose for which it was not designed.'"

*Yaklevich*, 626 N.E.2d at 118 (quoting Prosser & Keeton, The Law of Torts (5th ed.1984) 897,

Section 121).  Thus, "there is no liability [for abuse of process] where the defendant has done

nothing more than carry out the process to its authorized conclusion, even though with bad

intentions." *Id.* at 118 n. 2 (citing Prosser & Keeton, *supra*, at 898).  Rather, in an abuse of process

case, "[t]he improper purpose usually takes the form of coercion to obtain a collateral advantage, not

properly involved in the proceeding itself, such as the surrender of property or the payment of

---

[6/] As this case will proceed, this Court has authority to consider a motion to amend the complaint to reassert
this claim if plaintiffs can more specifically allege a cause of action.  Rule 54(b) provides:

"When an action presents more than one claim for relief []the court may direct entry of a final
judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines
that there is no just reason for delay. Otherwise, any order or other decision, however designated, that
adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not
end the action as to any of the claims or parties and may be revised at any time before the entry of a
judgment adjudicating all the claims and all the parties' rights and liabilities.

Case No. 1:11-CV-00056
Gwin, J.

money, by the use of the process as a threat or a club." *Robb v. Chagrin Lagoons Yacht Club, Inc.,*
*662 N.E.2d 9, 14 (Ohio 1996)*.

Here, even accepting the Plaintiff's allegations as true, their claim for abuse of process fails.
In support of their claim, Plaintiffs say that "the very act of attempting to force people out of their
homes when their client does not have the proper paperwork to prove ownership constitutes malice."
[Doc. 14 at 16.]  However, the Plaintiffs own allegations negate several of the elements of this cause
of action.

On the first element – a legal proceeding initiated in proper form and with probable cause
– the Plaintiffs allege that the Defendants did *not* have the proper standing or evidence needed to
initiate their foreclosure actions.  In claiming that the Defendant's clients did not have probable
cause to sue, the Plaintiffs seek to prove the exact opposite of this element of the abuse of process
claim.  Similarly, on the second element of the abuse of process claim – the proceeding has been
perverted to attempt to accomplish an ulterior purpose for which it was not designed – the Plaintiffs
own allegations again negate this element.  The Plaintiffs claim that the Defendants initiated
foreclosure actions without standing in the hope that it could nonetheless force the residents out of
their homes.  [Doc. 1-1 at 2-3; Doc. 14 at 16.]  However, the proper purpose of a foreclosure action
is to force people out of their homes; the Plaintiffs are alleging not that the Defendant used a
foreclosure action for an improper purpose, but that the Defendants instituted foreclosure actions
without reasonable hope of success.

Indeed, "'abuse of process differs from malicious prosecution in that the former connotes the
use of process properly initiated for improper purposes, while the latter relates to the malicious
initiation of a lawsuit which one has no reasonable chance of winning.'" *Clermont Environmental*

Case No. 1:11-CV-00056
Gwin, J.

*Reclamation Co. v. Hancock*, 474 N.E.2d 357, 362 (Ohio Ct. App. 1984); *see also Avco Delta Corp. v. Walker*, 258 N.E.2d 254, 257 (Ohio Ct. App. 1969) ("the malicious abuse of process is the employment of a process in a manner not contemplated by law, or to obtain an object which such a process is not intended by law to effect"). Here, rather than using the lawsuit to obtain a collateral advantage, the Plaintiffs allege that the Defendant filed the appropriate type of action for their ultimate goal – foreclosure of a home – but filed that action without proper probable cause. *See Havens-Tobias v. Eagle*, 2003 WL 1601461, at * 5 (Ohio Ct. App., Mar. 28, 2003).

Accordingly, since the Plaintiffs' allegations do not make out a claim for abuse of process, the Court **GRANTS** the Defendant's motion to dismiss on this claim.

*III.D Malicious Prosecution (Count 4)*

The Plaintiffs also assert a claim of malicious civil prosecution. [Doc. 1-1 at 10.] To assert a claim for malicious prosecution under Ohio law, a plaintiff must prove: "(1) malicious institution of prior proceedings against the plaintiff by defendant . . . (2) lack of probable cause for the filing of the prior lawsuit, . . . (3) termination of the prior proceedings in plaintiff's favor, . . . and (4) seizure of plaintiff's person or property during the course of the prior proceedings." *Robb*, 662 N.E.2d at 13 (citing *Crawford v. Euclid Nat'l Bank*, 483 N.E.2d 1168, 1171 (Ohio 1985)).

Under the first element, malicious institution of prior proceeding, the Court finds that the Plaintiffs' allegation satisfy this element. The Plaintiff alleges that the Defendant filed the foreclosure actions with malice since the Defendant knew that its clients did not have proper standing to sue. [Doc. 1-1 at 2.] This allegation, if proven true, would sufficiently satisfy the malice element of a claim of malicious prosecution. *See Eberhart v. Paintiff*, 2005 WL 1962993 at *6 (Ohio Ct. App., Aug. 17, 2005) ("malice may be inferred from the absence of probable cause");

-13-

Case No. 1:11-CV-00056
Gwin, J.

On the second element, the Plaintiffs also adequately allege that the Defendant lacked probable cause for the filing of this lawsuit.  In the complaint, the Plaintiffs say that the Defendant's clients lacked basic standing to bring the lawsuit since their clients were not the proper holders of the mortgage notes and that Defendant knew of this lack of standing.  [Doc. 1-1 at 2.] Therefore, this element is satisfied for purposes of a motion to dismiss.

As to the third element – termination of the prior proceeding in favor of the plaintiff – the Plaintiffs allege that all of the underlying foreclosures were terminated in their favor due to a lack of standing.  This allegation, if proven true, would satisfy the third element.  *See Vitrano v. CWP Lmtd. Partnership*, 1999 WL 1261151, at *4 (Ohio Ct. App., Dec. 22, 1999).

The Plaintiffs here, though, fail to adequately allege the fourth element – seizure of plaintiff's person or property during the course of the prior proceedings.  None of the Plaintiffs allege that their property was seized due to the actions of the Defendant, which is fatal to their claim of malicious prosecution. Ohio courts have emphasized that the seizure element is a necessary component of a claim for malicious civil prosecution and that the claim cannot survive without a seizure of property. *See Robb*, 662 N.E.2d at 14.

Indeed, a claim for malicious civil prosecution does not lie simply because a previously filed claim is meritless, but rather, only in cases "where there is a prejudgment seizure of property, i.e., where there essentially has been a judgment against, and a concomitant injury suffered by, a defendant before he has had a chance to defend himself." *Id.* at 14.  This element of the cause of action has been strictly interpreted to apply only to seizures of actual real or personal property.  *See, e.g., Aames Capital Corp. v. Wells*, 2002 WL 500320 at *6 (Ohio Ct. App. Apr. 3, 2002) ("damage to a person's credit, however, does not constitute seizure of property with regard to a malicious

-14-

Case No. 1:11-CV-00056
Gwin, J.

prosecution claim"); *Clauder v. Holbrook*, 2000 WL 98218 at *2 (Ohio Ct. App., Jan. 28, 2000) (holding that rendering a title to land unmarketable during pendency of a lawsuit is not a seizure for purposes of malicious prosecution); *Ahlbeck v. Joelson*, 1997 WL 458460, at *3 (Ohio Ct. App., Aug. 8, 1997) (freezing of assets during bankruptcy proceedings caused by suit does not satisfy seizure element).  Thus, because none of the Plaintiffs allege that their property was seized during the course of the foreclosure proceedings instituted against them, the Court finds that they do not adequately plead this cause of action.

Accordingly, the Court **GRANTS** the Defendant's motion to dismiss this claim.

*III.E  Ohio Consumer Sales Protection Act, Chapter 1345 (Count 5)*

Next, the Plaintiffs allege a violation of the Ohio Consumer Sales Protection Act, Chapter 1345.  Specifically, the Plaintiffs say that the conduct of the Defendant "commenc[ed] foreclosure proceedings when their clients lack standing [which] are unfair, deceptive and unconscionable sales practices under O.R.C. §§ 1345.02 and 1345.03.

Ohio Revised Code section 1345 makes it unlawful for a supplier to engage in an unfair, deceptive, or unconscionable act or practice in regard to a consumer transaction.  O.R.C. § 1345.02. The OCSPA defines a "supplier" as a "person engaged in the business of effecting or soliciting consumer transactions, whether or not he deals directly with the consumer."  O.R.C. § 1345.01(B). The statute has been generally interpreted as applying to the collection of debts associated with consumer transactions by attorneys.  *See Celebrezze v. United Research, Inc.*, 482 N.E.2d 1260, 1262 (Ohio 1984); *see also Schroyer v. Frankel*, 197 F.3d 1170, 1177 (6th Cir. 1999).  Thus, the Court concludes that the debt collection activities of Defendant Lerner fall within the purview of the statute.

-15-

Case No. 1:11-CV-00056
Gwin, J.

The Ohio Consumer Protection Statute provides generally that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction." O.R.C. § 1345.02(A).  Although a somewhat unresolved issue, other courts have held that a law firm collecting a debt on behalf of a mortgagee may be amenable to suit under this Act.  *See Delawder, 443 F. Supp.2d at 953; Havens-Tobias v. Eagle, 2003 WL 1601461, at *4-5 (Ohio Ct. App. March 28, 2003).*  Indeed, "[g]iven the [Ohio Consumer Protection Act's] purpose to protect consumers from deceptive acts and practices, and Ohio courts' recognition that debt collection falls within [its] ambit, the Court believes Ohio courts would recognize a cause of action under Section 1345.02(B)(10) for all deceptive debt collection practices, including a supplier's deceptive lawsuit to collect a debt."  *Delawder, 443 F.2d at 953.*  This Court now finds the rationale of the court in *Delawder* persuasive, and also finds that the filing of deceptive lawsuits violates the Ohio Consumer Protection Act.  *See, e.g., Becker v. Montgomery, Lynch, 2003 WL 23335929, at *2 (N.D. Ohio, Feb. 26, 2003)* (holding that conduct which violates the FDCPA also violates the Ohio Consumer Protection Staute); *Lee, 484 F. Supp.2d at 821* (holding that Ohio Consumer Protection Act applies to debt collection practices of law firms).

Accordingly, the Court finds that the Plaintiffs' allegations, if proven true, would be actionable under the Ohio Consumer Protection Act.  The Plaintiffs here allege that the Defendant knowingly brought deceptive lawsuits and also made fraudulent assignments of mortgage notes to support standing to sue.  The Court, therefore, **DENIES** the Defendant's motion to dismiss this Count.[7/]

---

[7/] The Court need not yet consider whether a class action under Chapter 1345 may be validly brought.  This issue may more appropriately be resolved in a motion for class certification.

-16-

Case No. 1:11-CV-00056
Gwin, J.

*III.F   Frivolous Lawsuits – Ohio Revised Code Section 2323.51*

Finally, the Plaintiffs bring a claim under Ohio Revised Code Section 2323.51, saying that they are entitled to "sanctions, including attorney fees," since they argue that the Defendant filed frivolous lawsuits against them. [Doc. 1-1 at 11; Doc. 14 at 18.] The Defendant says this claim must be dismissed as untimely. [Doc. 9 at 18-19.]

Under Section 2323.51, a litigant may receive an award of attorney's fees where their opponent has been found to have engaged in "frivolous conduct," which is defined, *inter alia*, as conduct that is meant "merely to harass or maliciously injure" or "is not warranted under existing law [or] cannot be supported by a good faith argument," as making "allegations or other factual contentions that have no evidentiary support," or as denials "or factual contentions that are not warranted by the evidence." O.R.C. § 2323.51(A)(2)(a)(i)-(iv).

Although the alleged conduct of the Defendant would seem fall within the purview of the statute, the Plaintiffs claim under the this statute fails for several reasons.   First, the proper forum for a motion brought under O.R.C. Section 2323.51 would be the original state court foreclosure actions that the Defendant filed against the Plaintiffs.  Indeed, the "[r]elief under R.C. 2323.51 is obtained by filing a motion in a pending case," and not in a later separate civil action.  *Gevedon v. Gevedon,*855 N.E.2d 548, 553 (Ohio Ct. App. 2006); *see also Roo v. Sain*, 2005 WL 1177940, at *5 (Ohio Ct. App. 2005).  In that regard, Section 2323.51 is quite similar to Federal Rule of Civil Procedure 11, which itself does not create a separate cause of action, but rather, creates a means of punishing misconduct in a pending action.  *See Sawyer v. Sinkey*, 610 N.E.2d 1219, 1223 (Ohio Ct. App. 1992).  Thus, the Plaintiffs attempt to improperly use that statute in this suit and any claims brought under that Section in this Court must be dismissed.

-17-

Case No. 1:11-CV-00056
Gwin, J.

Second, even if that claim could be brought in this Court, the statute of limitations on the claim has run.  Under the plain language of O.R.C. § 2323.51, any claim for attorney's fees brought under that statute must be filed "not more than thirty days after the entry of final judgment in a civil action or appeal."  O.R.C. § 2323.51.  Since more than thirty days have passed since the final judgment in each of the underlying state court foreclosure actions, the claims brought under that Section are not timely and must be dismissed.  The Court, therefore, **GRANTS** the Defendant's motion to dismiss this claim.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** the Defendant's motion to dismiss Counts 2, 3, 4, and 6 of the complaint against all Plaintiffs and Count 1 of the complaint as to Plaintiffs James and Kelly Unger; the Court **DENIES** the Defendant's motion to dismiss Count 1 of the complaint as to Plaintiffs Tamara Turner, Phillip Turner, and Mary Sweeney and Count 5 of the complaint as to all Plaintiffs.

IT IS SO ORDERED.


Dated: March 4, 2011                                    s/      *James S. Gwin*
                                                        JAMES S. GWIN
                                                        UNITED STATES DISTRICT JUDGE