UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| TAMARA TURNER, *et al.* Plaintiffs, vs. LERNER, SAMPSON & ROTHFUSS Defendant. | CASE NO. 1:11-CV-00056 OPINION & ORDER [Resolving Doc. No. 25] |

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this Fair Debt Collections case, the Plaintiffs file motion for a preliminary injunction under Federal Rule of Civil Procedure 65(a). [Doc. 25.] The Defendant opposes the motion. [Doc. 26.] After considering the parties' arguments and submissions, the Court **DENIES** the motion.

## I. Background

Plaintiffs Tamara Turner, Phillip Turner, Mary Sweeney, James Unger, and Kelly Unger allege violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, and the Ohio Consumer Protection Act, O.R.C. Chapter 1345 ("OCPA"). [Doc. 1.] Defendant Lerner, Sampson & Rothfuss ("Lerner") is a law firm that prosecutes mortgage foreclosures. Generally, the Plaintiffs allege that Defendant Lerner violated both of these statutes because it has a practice of filing foreclosure lawsuits even though its clients lack proper standing to sue and because its employees fraudulently execute assignments of mortgage notes from Mortgage Electronic

Registration System ("MERS") to its clients without permission. [*Id.*]

In the current motion, Plaintiffs seek an order enjoining the Defendant from "filing foreclosure complaints when their client lacks standing to foreclose, from having their own employees execute assignments of mortgages as corporate officers of MERS, from submitting affidavits that are not based upon personal knowledge as evidence in foreclosure cases, and from drafting assignments of mortgage to securitized trusts in violation of the Pooling and Servicing Agreements these same trusts filed with the United States Securities and Exchange Commission." [Doc. 25 at 1.] Specifically, the Plaintiffs seek to enjoin a sheriff's sale scheduled to occur on April 11, 2011. [*Id.* at 9.] The Plaintiffs say that the Defendant is planning to sell a number of homes in the sheriff's sale and that the Defendants engaged in a variety of illegal behaviors during the underlying foreclosure actions. [*Id.* at 9.] The Plaintiffs claim that the assignments of the mortgage notes was fraudulent and that Lerner's clients lacked standing to sue. [*Id.* at 10-11.] The Plaintiffs say that the injunction is warranted because all of the individuals are putative class members and will suffer irreparable harm should the sheriff's sale proceed. [*Id.* at 10-11.]

## II. Analysis

*II.A Standing*

As a preliminary matter, the Court finds that the Plaintiffs do not have proper standing to seek the relief requested. To satisfy Article III's standing requirement, a plaintiff must have suffered some actual or threatened injury due to the alleged illegal conduct of the defendant; the injury must be 'fairly traceable' to the challenged action; and there must be a substantial likelihood that the relief requested will redress or prevent plaintiffs injury. *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982). Apart from the minimum

constitutional requirements for standing, the Supreme Court recognizes other "prudential limitations" on the question of standing. *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975). Among these limitations, a party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Id*.

None of the individuals whose homes will be sold are currently parties to this suit and there is also no allegation or evidence that any of the actual Plaintiffs will be in any way affected by the sale of these homes. In essence, the Plaintiffs are challenging the validity of the assignment of the mortgage notes now allegedly held by the foreclosing banks. However, it is generally accepted law that "a litigant who is not a party to an assignment lacks standing to challenge [ ] assignment" of a note. *Livonia Properties Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC*, 399 F. App'x 97, 102 (6th Cir. 2010); *Liu v. T & H Mack, Inc*., 191 F.3d 790, 797 (7th Cir. 1999). The Plaintiffs in this case are not parties to the assignments that are challenged – or seemingly connected in any way to the assigned note – and are unable to challenge the chain of title. *See also* *In Re Cook*, 457 F. 3d 561, 567 (6th Cir. 2006) ("because neither the debtors nor the Trustee are parties to the [instrument]. . . [t]hey lack standing to enforce it.). Here, the Plaintiffs cite no legal right to challenge the assignment of these notes and allege no personal injury that they will suffer should the sales proceed. As such, they lack standing to sue. *Bridge v. Aames Capital Corp.*, 2010 WL 3834059, at *3-6 (N.D. Ohio, Sept. 29, 2010); *Livonia Property Holdings, L.L.C. v. 12840-12976 Farmington Road Holdings, L.L.C.*, 717 F. Supp.2d 724, 737 (E.D. Mich. 2010).[1/]

---

[1/] In seeking a broad injunction preventing Lerner from filing new foreclosure actions, it seems that the Plaintiff are in reality seeking class relief prior to the filing of even a motion for class certification. However, prior to the certification of a class, the named Plaintiffs have "no cause to take extraordinary injunctive measures to protect the interests of the class." *Gooch v Life Insurance Investors Ins. Co.*, 589 F.3d 319, 332 (6th Cir. 2009). The Plaintiffs are
(continued...)

*II.B Preliminary Injunction*

Even if the Plaintiffs do have standing to move for an injunction on behalf of these third parties, the Court finds that Plaintiffs fail to carry their burden on the merits of showing that a preliminary injunction should be granted.

In considering whether to grant a request for a preliminary injunction, a court should consider: (1) the likelihood that the party seeking the preliminary injunction will succeed on the merits of the claim; (2) whether the party seeking the injunction will suffer irreparable harm without the grant of the extraordinary relief; (3) the probability that granting the injunction will cause substantial harm to others; and (4) whether the public interest is advanced by the issuance of the injunction. *See* *United States v. Edward Rose & Sons*, 383 F. 3d 258, 261 (6th Cir. 2004). These factors "do not establish a rigid and comprehensive test for determining the appropriateness of preliminary injunctive relief." *Frisch's Rest., Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985) (citing *Tate v. Frey*, 735 F.2d 986, 990 (6th Cir.1984)). Instead, they are "factors to be balanced, not prerequisites that must be met." *Frisch's*, 759 F.2d at 1263 (citations omitted). "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir.2000) (citation omitted).[2/] [3/]

---

[1/](...continued)
welcome to file a motion for class certification, but prior to the resolution of that motion it is inappropriate to consider granting of class relief.

[2/] Under the current case law, it is not clear whether the Court may grant equitable relief under the FDCPA. The Sixth Circuit has yet to rule directly on the issue of whether injunctive relief and declaratory judgment are appropriate under the FDCPA. *See* *Kafele v. Lerner Sampson & Rothfuss, L.P.A.*, 62 F. App'x 584 (6th Cir. 2003) (indicating that injunctive relief is not available to private litigants but not directly resolving issue). However, other circuits have dealt with this issue and decided that the FDCPA provides for only actual damages to private litigants. The
(continued...)

The Court finds that the Plaintiffs fail to establish the first factor – the likelihood that the party seeking the preliminary injunction will succeed on the merits of the claim. *Edward Rose & Sons*, 383 F. 3d at 261. First, the Plaintiffs primarily focus on whether *they* will succeed on the merits, and discuss the strength of the cases of Tamara Turner, Phillip Turner, Mary Sweeney, James Unger, and Kelly Unger. [Doc. 25 at 4-8.] However, the proper inquiry here is whether the individuals whose homes will be sold in the sheriff's sale are likely to succeed on the merits. To ultimately succeed, in a class action or otherwise, each of those individuals must individually prove that he or she is entitled to relief under the FDCPA or the OCPA. However, beyond simply attaching the mortgage note assignments and alleging that the assignments were made fraudulently, the Plaintiffs do not offer any evidence indicating that they can prove their claims at trial.

Moreover, even if the Court did consider evidence relating to the named Plaintiffs, the Court also finds that the Plaintiffs fail to carry their burden. The Plaintiffs say that they have a "100% chance of success on the merits" because Lerner filed foreclosure actions against each of them and because all of these actions were then subsequently dismissed for lack of standing. [Doc. 25 at 5.] Simple inability to prove standing in a debt collection action, however, is not a violation of the FDCPA or the OCPA. *Harvey v. Great Seneca Financial Corp.*, 453 F.3d 324, 331-33 (6th Cir.

---

[2](...continued)
Third Circuit found that "[t]he FDCPA contains no express provision for injunctive or declaratory relief in private actions . . . Most courts have found equitable relief unavailable under the statute, at least with respect to private actions." *Weiss v. Regal Collections*, 385 F.3d 337, 341 (3rd Cir. 2004). *See also* *Crawford v. Equifax Payment Services, Inc.*, 201 F.3d 877 (7th Cir. 2000) (holding that "all private actions under the Fair Debt Collection Practices Act are for damages."); *Washington v. CSC Credit Services, Inc.*, 199 F.3d 263, 268 n. 4 (5th Cir. 2000). Although agreeing with the analysis in *Weiss* and *Crawford*, the Court need not resolve this issue because injunctive relief is available to private litigants under the OCPA. O.R.C. § 1345.09(D).

[3] To establish a likelihood of success, a plaintiff must, "at a minimum, show[ ] serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if the injunction is issued." *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 400 (6th Cir. 1997) (quotation and citation omitted).

2006); *Delawder v. Platinum Financial Services*, 443 F. Supp.2d 942, 945-53 (S.D. Ohio 2005). Rather, as the Court already explained in its ruling on the Defendant's motion to dismiss, the Plaintiffs must prove that the Defendants filed the actions knowing their clients did not possess standing to sue, either due to legal insufficiency of the assignment of the notes or through fraudulent assignment to clients from MERS. *Turner v. Lerner, Sampson & Rothfuss*, 2011 WL 834064, at *5, *10 (N.D. Ohio, Mar. 4, 2011). The Plaintiffs' claim that a dismissal due to lack of standing ensures victory misstates and oversimplifies the applicable law. The Plaintiffs also seem to rely heavily on general information about the industry-wide practices of the mortgage industry; however, this sort of information does little to indicate success on the merits for the specific Plaintiffs here or for the non-parties whose homes will be sold on April 11.[4/]

Thus, in considering the first factor, the Court finds that the Plaintiffs do not submit any evidence showing a strong likelihood of success on either the FDCPA or the OCPA claims. This is not to say that the Plaintiffs *will not* succeed on the merits at summary judgment or at trial. Rather the Court is merely finding that there are a multitude of factual issues that will bear upon whether the claims succeed, issues which the Plaintiffs make no effort to address on the current motion. *See* *Nken v. Holder*, 129 S. Ct. 1749, 1761 (2009) ("a likelihood of success on the merits, requires more than a mere possibility that relief will be granted"); *Cooey v. Strickland*, 604 F. 3d 939, 945-46 (6th Cir. 2010) (submitted information insufficient to show likelihood of success); *Thompson v. Abn Amro Mortgage Group*, 2010 WL 3842027, at *1 (E.D. Mich, Sept. 28, 2010) (denying request for

---

[4/] For example, the Plaintiff spends nearly a page discussing the findings a state court judge in Alabama regarding the mortgage pooling and servicing practices of Lasalle Bank as evidence of a violation in the current suit. [Doc. 25 at 11.] Similarly, the Plaintiffs attempt to connect the actions of Lerner to the suicide of Linda Clark. [*Id.* at 13.] None of this information has bearing on whether the Defendant violated the FDCPA or the OCPA as to the actual Plaintiffs.

injunction to block foreclosure where plaintiff made "sweeping allegations against Defendants" that "lack factual support"); *Geans v. Oxford Bank*, 2010 WL 3273276, at *1-2 (E.D. Mich., Aug. 19, 2010) (same).

Having found that the Plaintiffs do not meet the first factor, the Court will proceed to the remaining three factors, although it is generally unnecessary to do so if the first factor is not met. *Wilson v. Lexington-Fayette Urban County Government*, 201 F. App'x 317, 324 (6th Cir. 2006). The second factor is whether the party seeking the injunction will suffer irreparable harm without the grant of the extraordinary relief. *Edward Rose & Sons*, 383 F. 3d at 261. In establishing the harm, a movant must provide record evidence, such as facts and affidavits, from which the court can make specific findings. *Ohio ex rel. Celebrezze v. Nuclear Regulatory Comm'n*, 812 F.2d 288, 290-91 (6th Cir. 1987). "[A] plaintiff's harm is not irreparable if it is fully compensable by money damages." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992).

First, the Court notes that none of the named Plaintiffs to this action are in danger of having their homes sold. Although the Plaintiffs suggest that the potential threat of a future foreclosure action being filed against them satisfies this element, "the mere *future* threat of foreclosure and eviction fails to satisfy [Plaintiff's] burden that he will suffer irreparable harm." *Cervantes v. Countrywide Home Loans, Inc.*, 2009 WL 1636169, at *2 (D. Ariz., Jun. 10, 2009). Thus, as to the named Plaintiffs, there is no threat of imminent harm.

Second, even should the interests of the non-parties be considered, the Plaintiffs fail to carry their burden of showing irreparable harm. The possibility that adequate compensatory or other corrective relief will be available at a later date weighs heavily against a claim of irreparable harm. *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991).

In certain circumstances the threat of being evicted from a residence and the realistic prospect of homelessness constitute a threat of irreparable harm. *See, e.g.*, *Smith v. State Farm Fire Ins. & Cas. Co.*, 2010 WL 3270116, at *10 (E.D. Mich., Aug. 17, 2010) (finding a showing of irreparable harm where the plaintiff and her four children had only two weeks to vacate their current rental home and the plaintiff was unable to afford to pay for alternate housing). However, here, the Plaintiffs offer absolutely no evidence showing that the individuals whose homes are to be sold on April 11 cannot later be adequately compensated with money damages should the underlying foreclosure actions be proven wrongful. *See* *Sheldon v. Vilsack*, 2011 WL 611891, at *3 (E.D. Mich., Feb. 11, 2011). With no factual record to consider, the Court cannot find that the threatened harm is irreparable.

The Court will next consider the third factor – the probability that granting the injunction will cause substantial harm to others. *Edward Rose & Sons*, 383 F. 3d at 261. The Plaintiffs say that this factor is satisfied because the Defendant will not be harmed by an injunction preventing them from illegally filing foreclosure actions. [Doc. 25 at 12.] This argument is, however, not persuasive. First, the argument assumes that the Defendant acted illegally; as already noted, the Plaintiffs offer no information tending to prove that accusation. Second, aside from the reputational harm this injunction would cause Lerner, the Plaintiffs' analysis grossly oversimplifies the probable harm caused by the Court granting the injunction. The Plaintiffs' argument entirely ignores the fact that the current owners of the homes in question and the notes associated with loans on those homes – presumably the financial institutions who claim to hold the applicable mortgage notes – will be harmed by being barred from selling these homes at the April 11 sheriff's sale. Beyond the economic cost of not being able to sell a particular asset for several months, the banks will potentially also be forced to pay insurance, taxes, and other fees associated with the ownership of

the homes for this time period. Although currently unpopular, the banks' interest in these homes cannot be ignored by the Court. All of these costs weigh against issuing the injunction.[5]

Finally, the Court will consider the last factor – whether the public interest is advanced by the issuance of the injunction. *Edward Rose & Sons*, 383 F. 3d at 261. The Court find that this factor does not weigh heavily in either direction. The Court does not ignore the harm suffered by individuals whose homes are foreclosed without proper standing, the effects of which the Plaintiffs vividly describe in their motion. [Doc. 25 at 12-13.] Nonetheless, the public interest would not be served by enjoining all foreclosure sales whenever there is a bare allegation that the underlying foreclosure may not have been conducted legally. Although it is unfortunate that thousand of homes in Ohio are subject to foreclosure, preventing financial institutions from selling these homes on mere allegation will discourage lending and will further erode the local housing market and economy. Given these considerations, this factor does not weigh heavily for either party. *See Baker v. People's Choice Home Loan, Inc.*, 2010 WL 3447614, at *4 (S.D. Ohio, Aug. 27, 2010) ("It is impossible to tell whether the public interest favors stopping one more foreclosure sale in an area of the nation with an extraordinary burden of such sales at the present or whether, instead, the health of the residential real estate market might be boosted by rapid enforcement of mortgage obligations").[6] If

[5] Due to these potentially significant harms, the Court would require a sizeable security before any injunction would issue. The Plaintiffs seem unable or unwilling to post bond and also claim that doing so is unnecessary due to the Defendant's illegal conduct. [Doc. 25 at 5.]

[6] Even aside from the multitude of failings compelling denial the Plaintiffs' motion, the Court is also concerned that granting the requested relief may violate the Anti-Injunction Act, 28 U.S.C. § 2283, or the Rooker-Feldman Doctrine.

Under the Anti-Injunction Act, the Court ordinarily "may not grant an injunction to stay proceedings in a State court," 28 U.S.C. § 2283, except in limited circumstances that do not appear to exist here. *See Cragin v. Comerica Mortgage Co.*, 1995 WL 626292, at * 1 (6th Cir., Oct. 24, 1995) (holding that the Anti-Injunction Act "generally precludes federal injunctions that would stay pending foreclosure proceedings in the state courts"); *see also Sherman v. Saxon Mortg. Services, Inc.*, 2010 WL 2465459, at *6 (W.D. Tenn., Jun. 14, 2010); *Leavell v. Wells Fargo Bank, N.A.*, 2009 WL 1439915, at *3-5 (E.D. Mich., May 19, 2009). Given the incomplete nature of the record, the Court is unable (continued...)

Plaintiffs ultimately show that Defendants initiated foreclosure proceedings without authority, relief will be later available.

### III. Conclusion

Having considered the foregoing factors, the Court finds that the Plaintiffs fail to show that they are entitled to injunctive relief. First, the Court finds that the Plaintiffs lack standing to seek an injunction on behalf of third parties. Second, even should the Plaintiffs have standing, the Court finds that the Plaintiffs fail to meet their burden of showing that they are entitled to a preliminary injunction. Thus, the Court **DENIES** the Plaintiffs' motion for a preliminary injunction.

IT IS SO ORDERED.

Dated: April 11, 2011

s/ *James S. Gwin*
JAMES S. GWIN
UNITED STATES DISTRICT JUDGE

---

[6](...continued)
to assess whether granting an injunction barring the sale of the homes of on April 11 would interfere with any ongoing state proceedings.

Further, should the proceedings be completed, the Court could be placed in the position of hearing an appeal from a state court action. The Rooker-Feldman abstention doctrine bars lower federal courts from exercising jurisdiction over a case that is the functional equivalent of an appeal from a state court judgment. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983); *see also* *Battah v. ResMAE Mortg. Corp*., 746 F. Supp.2d 869 (E.D. Mich. 2010); *Luckett v. U.S. Bank Nat'l Ass'n*, 2009 WL 22858 at * 3-4 (E.D. Mich. Jan. 5, 2009) (applying Rooker-Feldman and denying a temporary restraining order in a mortgage foreclosure case based upon no likelihood of success on the merits, observing that "there is simply no way for this or any other court to grant relief without disturbing the judgments of foreclosure entered by the state court, and [e]ach of the myriad and vague claims set forth by the plaintiffs rests on the premise that the state court entry of foreclosure was invalid," and concluding that "to sustain the Plaintiff's complaint in this case would require the Court to in effect act as an appellate tribunal and conclude that the Michigan court simply made the wrong decision in the foreclosure and possession action.")

Given the lack of information submitted by the Plaintiff to address these serious issues, the Court hesitates before stepping into such treacherous waters. Although multiple other grounds exist for denying this motion, these concerns also weigh heavily in favor of denial.